I know you need to take some time to transition and get settled. Mr. Freiman, whenever you're ready. May it please the Court, Lee Frenon and Tom Sinclair on behalf of Dr. Andy Lemons. Broadly, this argument will focus on three issues. First, the benefit update rider was improperly dismissed because the Court had specifically rejected arguments that amendment was necessary for it to proceed because discovery and his bond debriefing have been fully completed. Second, the Court should certify a question to the Alabama Supreme Court regarding whether mental anguish damages are available for breach of a non-commercial disability insurance contract after the changes to Alabama law described in Pate and Lunsford. Third, Dr. Lemons is entitled to a retrial or directed verdict as to bad faith because Principal fails to present a cognizant defense to any of bad faith's elements. Assuming amendment was necessary, it was a piece of discretion to deny leave to a man based on undue delay. One year into the case, Judge Proctor at a discovery hearing specifically rejected Principal's arguments that amendment was necessary for discovery to proceed on the claim. After that hearing, he found that it was an underlying claim in the complaint. After that hearing, Principal responded to discovery. We had a deposition devoted to the topic entirely when we deposed the underwriter who wrote the benefit update letters, Salem Thorpe. Then we exchanged expert reports dealing with the benefit update rider claim. And then all six of the party's dispositive briefs touched on this claim. This is not like the authority they rely on where it's a new claim that was born in a response brief in an attempt to avoid summary judgment. It had been there every step of the way. I want to make sure that I understand. Are you still arguing that amendment was not necessary? We don't concede that it was necessary. We shared Judge Proctor's opinion on that, but we felt like time was better spent arguing even if it was necessary. It was an abuse of discretion to deny leave. So is your argument here that it was necessary and that the court erred in denying the ability to amend to add that? No, ours is that it's unnecessary, but ultimately whether it was necessary or not doesn't matter because it was an abuse of discretion to deny leave based on undue delay. You didn't raise that it was not necessary in your blue brief, right? We are quoted in a Carrizazo case where the Eleventh Circuit had said pleading issues dissipate once the district court evaluates the sufficiency of evidence at the summary judgment stage, which happened here. But the vast majority of our brief was focused on even if it was necessary, it was an abuse of discretion here. Let me ask you this. Are you saying that the delay is excusable because it stemmed from the fact that a claim or defense changed over the course of time? No, sir. It didn't change at any point. The delay was four days in this event. We were operating under the... I thought discovery had ended longer than that. Yes. We had a deposition, written discovery, and expert reports on the topic. So you knew all you'd know about the case right then? Yes. So why didn't you file the amendment, motion for the amendment right then? Well, based on the first presiding judge's understanding that there was an underlying claim, we did not believe that was necessary. And they had never expressed... This argument was raised for the first time by Principal Leonard Prybrief. Frankly, the argument that amendment was necessary is what caught us off guard because we thought that had been said. It depends on what you mean by underlying claim. The claim that started this whole process is an underlying claim. The breach of contract. Again, it depends. I don't pretend to know exactly what Judge Proctor meant, but I think the parties clearly understood because discovery proceeded unabated. And it was in all six of our dispositive briefs. Principal has never alleged prejudice, nor could they. This is not a case where additional discovery was necessary or a new party was necessary. We were... It was all teed up. And the rule says that amendment must be freely given when justice requires. And we asked for amendment within four days of finding out that the new presiding judge had an opposite of position on this issue. We tried to fix it as soon as we found out it was a problem. It was also denial... Abusive discretion... Sorry. The court also denied leave to amend based on futility. The court found that there was no basis for tolling under Alabama law, which is a question of fact. Subject to de novo review, and Principal bore all dispositive burdens. There is no dispute. The $10,000 cap directly contradicted the schedule provided to Dr. LeMunster in the sale, showing his benefit going up to $15,000. Nor is there any dispute that directly contradicted their marketing materials, which said this is a capless benefit. And that capless feature is a distinct advantage on our competitors. Nevertheless, the court found that Dr. LeMunster was put on notice via the decision letters written by Salem Thorpe. He reversed the party's dispositive burdens due to all adverse inferences against Dr. LeMunster, which is difficult to reconcile with the testimony from Salem Thorpe that his benefit was capped at $10,000 and that her letters made no mention of the cap. This notion that a denial letter turns this question of fact into a question of law, essentially turns Alabama law on its head and the applicable standard. Principal did not carry its dispositive burdens here, and we ask that the court reverse and remand further proceedings of the benefit update item. On your mental anguish damages issue, what's your response to Walker? Our response is... The court got it wrong? The state doesn't become an error until you're accused of correcting it. That would do away with our prior panel precedent rule in its entirety, you know. Well, I agree the prior panel rule is an issue and that we're faced with a fork in the road to the extent the court agrees that the Alabama Supreme Court... Yeah, I have often wondered and been tempted, if you think a prior panel got something wrong on the state law issue. We have a local rule that says you never take state law issues en banc. Judge Joe Flatt tried it one time when it was outvoted 11 to 1. But I've often wondered, okay, you don't overrule a prior panel on state law without a change in state law en banc, and you can't take it en banc. But how about certifying the question? And I say I've been tempted, but I will tell you this, I've never given in to the temptation. It's the thing about state law, not just respecting the state courts, but it's also what we say doesn't bind a single judge of a single court in the state involved. I mean, it only exists until some state judge says, I'm not going to follow it. Now, if it's a state supreme court or state court of appeals with no indication of the contrary, then that changes our opinion. But if it's a state trial judge that said they don't know what they're talking about, they don't have to follow it. And we don't certify state law questions for that reason. I'm sorry, we don't certify state law questions that have been settled by another panel of this court. We never have. We could, but. Well, I think, to quote Your Honor, under our judicial system, there's only one Alabama Supreme Court, and the Eleventh Circuit is not that court. That's a bracket on that, isn't it? Yes. I understand that certification is a discretionary decision where you're simply asking the court. I can't speak to the prior times this has crossed anyone's desk, but this is a certainly clear and compelling case that something has gone wrong. Dr. Lemons filed his state law claims in state court, and his substantive rights were erased when the principal removed it to federal court. The Alabama Supreme Court said that the general prohibition on mental anguish damages regarding breach of a non-commercial insurance contract had been changed, implicitly modified, and overruled at least three times in the Lunsford and Pate decisions. The notion that nothing changed because Lunsford was about a house and Pate was about a special kind of insurance is irreconcilable with most of what Justice Maddox said in his Lunsford concurring dissent, and then less than three months later, in the unanimous opinion he authored, incorporating the explanation of the Lunsford holding. Now, certification is subject to two prongs. It's the same language for all three states in the 11th Circuit. The first one is whether it's determinative of said cause. We think this is literally determinative of Dr. Lemons' claim for mental anguish damages, and this is on all fours with at least three panel rulings regarding certification. In Cincinnati Insurance Company v. City of Talladega 552 F. 2nd 128, they certify the question regarding whether attorney's fees were available for two different types of bonds. In Georgetown Manor, Inc. v. Ethan Allen 991 F. 2nd 1533, they certify the question of whether a claim for loss of goodwill damages was available for a tortuous interference action. In NCI WorldCom Network Services v. UMass Tech, Inc., they certify the question whether loss of use damages were available and also how to calculate those damages. Oh yeah, that was 370 F. 3rd 1074, sorry. The second question is whether there's no clear controlling precedent. Under case law, the court asks whether there's substantial doubt whether Sanford's 1979 ruling relied upon in the Walker opinion was changed, implicitly modified, or overruled. We believe there is at least substantial doubt because that is exactly what the Alabama Supreme Court said happened. We simply ask that the court certify the question to the Alabama Supreme Court because principles of comedy and federalism would dictate that, I hope. As to bad faith, we're dealing with two paths that happened here. I guess there's what in fact happened and then the hypothetical scenario that was tried after the summary judgment rulings. In fact, it was undisputed they denied this claim by finding that everything he did was a regular occupation. That was the only reason ever given here. That was deemed to be unreasonable as a matter of law and it is undisputed that that happened because principle instructed its claims department to retroactively change the terms of policies. Is your primary argument on that that the proof of loss poisoned the question for you? I guess that's why I try to bifurcate what actually happened versus this hypothetical scenario about what if they had tried to answer the primary question. Proof of loss really deals with that second scenario. The primary argument is an insurance company can't change the terms of the policy it sold. That's breach of contract. That's every element of bad faith. Principle never did anything to address that question. No dispute that it happened. No attempt to explain how it happened honestly. I mean, it was just ignored and they focused on this hypothetical what if we didn't do that. Our primary argument is the proof of loss just goes to if you are addressed with that, you do have to decide a claim and you can't point your finger at the insurance saying, well, we couldn't decide it, what your primary occupation was because you didn't give us enough evidence. Didn't Lemon's own expert say that she saw no bad faith? She was asked whether there was anything in the claim file which showed a dishonest purpose. None of the bad faith evidence was in the claim file we were provided. Second, their own Illuminae and Daubert motions prevented her from talking about the terms of the policy which is what our bad faith is about. But more fundamentally, nothing she did or did not say addressed whether an insurance company can honestly change the terms of policies that have already been sold. She never even talked about that topic. And that's what the basis of our claim is. Thank you. You've reserved still your three minutes for rebuttal. Mr. Nyman. Good morning, Judge Grant. And may it please the court, I'm John Nyman. I'm here for principle. There's simply not much left for this court to review in this appeal. It's a highly unusual appeal in the sense that it's taken by a plaintiff after a jury trial in which a trial judge submitted to the jury the two principle claims that the plaintiff had made in the case and certainly the ones that were pleaded in the plaintiff's complaint. That jury found that Dr. Lemons had proved one of those claims and found that he had not proved the other,  It awarded him half a million dollars full expectation damages for breach of contract. Yet he's the one appealing here. He offered four grounds in his brief and then trimmed them down to three today. It's a little unclear to me whether the third ground that my friend Mr. Frenon just discussed applies to both the third and fourth ground raised in the appellant's brief. But from principle's perspective, all four issues raised in the brief and then the three issued today are relatively straightforward. I don't want to take up more of the court's time than is necessary, but I can walk through, in summary, our position on all three or four depending how you count them. Well, I just have a question about what information the insurance company provided Mr. Lemon regarding the cap on his benefits. It seems like there were some benefits letters that were sent, but anything else to suggest that they accurately, reasonably, and timely informed him of the full scope of his rights in terms of the cap on his benefits? So, Judge Abudu, I mean, I can answer that question in a bunch of ways because I actually do think it highlights just how sound the district court's statute of limitations ruling was here. As a threshold matter, I should say that the district court certainly was correct to say that this claim wasn't pleaded in the complaint and that the request to amend the complaint came after the ruling on summary judgment after discovery was over. But in terms of the ultimate merits of the claim, the district court said that this was, that the proposed amendment or the proposed claim would have been futile because it was time barred in any event. And I do think it's worth drilling down into the details of the plaintiff's claim on the one hand and then the plaintiff's theory of the statute of limitations on the other because they just don't jive. There's some incoherency there. And let me explain what I mean. There are three letters that are mentioned in the briefing. There's a 2004 letter in which Dr. Lemons is informed that in light of the benefit update rider provision and in light of his submission of information regarding his financial situation, his monthly benefit was going up to $10,000 a month. I think I understand plaintiff's theory here. I think I'm not getting it wrong. Mr. Fernand can correct me if I'm wrong. His claim for damages under the BUR, the benefit update rider, is premised solely on the fact that that 2004 notice that told Dr. Lemons that he was at $10,000 was erroneous. He says actually in light of his calculations, the amount should have been $11,000 and change there. That was the point at which Dr. Lemons was on inquiry notice that something was going on in terms of the maximum amount of benefits that principal was going to provide under the benefit update rider. A reasonable person would have looked at that situation and said, they're giving me $10,000. I should have $11,000 and change. What's the deal? And that was 2004, long, long before this lawsuit was filed. Subsequent to that, Judge Abudu, there were two additional letters, one in 2007 and one in 2010. But as I understand, I understand the plaintiff to be saying two things about those letters. One is they didn't actually give rise to any damage claim because under their calculations, Dr. Lemons wouldn't have been entitled to any increase, any bump up in his benefits at that time. Why? Because his salary had not gone up between 2004 and 2007. Same between 2007 and 2010. So the plaintiff's claim is the district court said that those 2007 and 2010 letters were sufficient to put Dr. Lemons on inquiry notice of his claim. Dr. Lemons' response is, well, but there were other statements in those letters that led me to believe that there wasn't a cap because I could submit more information later. But I would suggest the court look even further back to 2004. That was really when this claim accrued and when Dr. Lemons was on inquiry notice. So what specifically should he have noticed? What specifically should he have worried about when he got the first letter, the 2007 letter? Well, the first letter, Judge Carnes, and it's more of a notice. It's document 72-20. It's the one that he gets in 2004 that says we are bumping you up, we're bumping up your maximum benefit to $10,000. At that point in time, he should have noticed under his own theory that that wasn't sufficient, that wasn't enough. His claim is, but for the cap at that point in time, he would have been at $11,000 and change. And so he forfeits future rights because he may have thought, I hate dealing with insurance companies. I've spent too much of my short and brief period on earth doing it. I'm going to let it slide for $1,100. And that keeps him from complaining later when he gets to be more money? Well, no, Judge Carnes, as I understand it, the plaintiff's claim is solely premised on that 2004 determination. They would say in 2004 it should have gone up to $11,000 and change, and he should have gotten $11,000 and change throughout the life of this policy. So, yes, absolutely. If he had a problem with what happened in 2004 in that determination, he should have filed a claim at least within six years saying the principal had breached his contract at that point in time. Otherwise, we've got the problem we dealt with in this case where you have a complaint that's filed more than a decade after that and things have changed and we couldn't even tell from the complaint that this particular claim had been raised. Let's say that the district court had made a more definitive ruling that the benefit update rider claim was fairly included in the complaint and then later reversed itself on the summary judgment order. Would you still argue that – set aside the statute of limitations argument, but would you still argue that Lemons had moved to amend too late? I think that – so, Judge Grant, I do want to talk about how definitive that ruling was. I would like the court to look at the text of that transcript. But the question is – For this, let's suppose that it was quite definitive and that there's no disagreement about that. So, let's say the district court had said, I read your complaint as alleging a claim that the benefit update rider was breached. Right. And you do not have to amend, Dr. Lemons. We're going to proceed along those lines. I suspect that if we had played gotcha at summary judgment at that point in time, that it could well have been an abuse of discretion for the court not to allow – I mean, it may well have been an abuse of discretion for the court to even say that an amendment was required. I think that that moment in time would have been the functional equivalent of an amendment. But that is not what happened in this case. And I'd point the court to the transcript, which is document 48. And in particular, the exchange between court and counsel where principal objected and said that this claim hadn't been asserted. The sole statement we get from the court is the court says, it's an underlying claim, comma, isn't. And then we have two dashes because the attorneys on both sides, typical attorneys are, and my side is blamed as well, are interrupting the judge with one attorney saying not and the other attorney, Mr. Frenon, saying goes to damages directly, which is quite contrary to the notion that this was an underlying claim. He's then saying, well, actually this goes to damages. What follows then is no definitive ruling from the court whatsoever. The court just says, I'm going to dash dash C. That's exactly what I'm getting at. I just don't understand why you all would spend time and money fighting over that. That's not the definitive ruling, Judge Grant, from your hypothetical at all. And in light of these circumstances, I do think that the plaintiffs were obliged to amend their complaint if they wanted to make this be a separate claim, as it undoubtedly was. It doesn't just go to damages. It is, in fact, a separate claim of a breach of contract. They needed to have that in their complaint so that when this case got briefed up at summary judgment, we filed our own initial motion for summary judgment here simultaneously with the plaintiffs here. If that claim had been in the complaint, we could have briefed that up at summary judgment  but it simply wasn't in the complaint. And the district court certainly had discretion here to say, look, from my perspective of managing my caseload, I'm not going to keep this claim that's not in the complaint in the case when I've got a lot of other things to deal with in this case in terms of a breach of contract claim and the bad faith claim, both of which ultimately were the subject of extensive briefing, extensive arguments from the attorneys, and ultimately the subject of a jury verdict in this case. If the court doesn't have any questions on the benefit update, Ryer, I'll let you move to what was the first issue in the briefs, second issue Mr. Fernand raised today, the question of the availability of emotional distress damages in Alabama. The only point I'd make on this is I'd plea to the court, and Judge Carnes in particular, to please resist temptation in this particular circumstance. Mr. Naaman, I find as I get older, it's easier to resist temptation. It should be especially easy to resist in this case because let's be clear about what Walker said. I mean, Walker did not just say that Alabama law is contrary to Mr. Fernand's interpretation. Walker also said that the court was not going to certify the question to the Alabama Supreme Court for its resolution. I'd submit that the prior panel rule requires this court to follow not only the substance of the court's ruling about Alabama law, but also its procedural ruling that this is not a proper question for certification to the court. One reason why Walker is so clearly right about that, I'd suggest, is the court's 2020 decision in the time limitation case, which says that to be determinative of said cause, the issue in front of the court needs to actually resolve a claim. And I'd submit that determination of whether a particular component of damages is available for a breach of contract claim does not resolve the claim itself and thus would be improper to certify under time limitation. Walker was thus correct, not only in terms of the substance, but the procedure. Onto the final issue in the case, which is really two issues in the brief. One issue argued today concerning whether the jury was properly charged on bad faith here. I know of no Alabama decision, state or federal, that has held that the plaintiff, the party with the burden of proof in a case such as this, in which one of the elements is a showing of a dishonest purpose on the part of the defendant, is entitled to judgment as a matter of law, notwithstanding a jury's verdict after listening to the witnesses that there was, in fact, no such dishonest purpose or the like. So the jury was, in terms of the request for judgment as a matter of law, the jury was fully entitled to rely on the demeanor, the credibility, and the overall testimony of principal witness Amy Ralston. She testified about why the determination here was made. She testified that she did so in good faith. That's a quintessential jury question. In terms of some of the other things that have been said, I would like to disagree with my friend, Mr. Frenon, about what the district court said about the principal's interpretation of this policy. The district court undoubtedly ruled that principal had gotten it wrong, but at several points in the brief, and again, today, Dr. Lemons has said that the district court had declared principal's interpretation unreasonable and had said that the contract was unambiguous. Neither of those things were said. If you look at the district court's ruling in the summary judgment motion or in the summary judgment order, which was the first time the court resolved this issue, the court simply said, here is how I read the policy. This is the correct interpretation of the policy. Finally, with respect to proof of loss, we've laid out our position on that matter in the briefs relatively definitively. I've seen ships pass in the night before, but I don't know if I've ever seen a night that was quite this long or this dark. We, frankly, don't understand at all how the plaintiffs can possibly characterize the defense to the breach of contract and to a limited extent to the bad faith claims here as one based on proof of loss. We were not urging forfeiture based on failure to provide proof of loss. We were simply telling the jury that in order for the plaintiff to succeed on a breach of contract claim and to a limited extent on bad faith, the plaintiff had to show that they were entitled to coverage under the policy. That was our argument, not this affirmative defense procedural slash forfeiture defense of proof of loss that for reasons unbeknownst to us, Lemons is trying to inject into this case now. My time is up. I thank the court. Thank you. Mr. Frenon, you've reserved your three minutes. So as far as the Walker Power Panel rule, it relied on a time meditation case dealt with the burden of proof. I can see why that's not determinative of said cause. The Walker Panel, we disagree that certification is subject to the Power Panel rule, but even if we assume it did, it's only an issue to the extent Walker itself complied with the Power Panel rule. And it's extension of time meditation to find that the question of whether damages are available. I'd like to hear, I hate to stop you, but I know you've got limited time. I'd like to hear your response to the statute of limitations argument, the 2004 point that Mr. Niman raised. He's right on quite a bit of it. The damages occurred because of 2004. 2007 and 2010 aren't really particularly relevant, and they couldn't plausibly provide notice. The idea that Dr. Liman should know that 10,000 was a wrong calculation is not, does not carry much water. We both had to obtain experts to do this. Underwriting of insurance is very, very complicated. It is not something that was just apparent, but also in the context of how this cap was uncovered, it's not even plausible that he could have uncovered it if he followed up. It directly contradicted all of their marketing materials, directly contradicted the schedule they gave him showing that 15,000. We had to get a court order. This is not how the question of fact is resolved under Alabama law, and a jury should get to decide whether that was sufficient notice, and I do not believe a jury would find that. As I recall, they fault you on that discovery too, didn't they? Yeah, it took a lot of work, but we eventually got it, and really it didn't come out until the deposition. Excuse me, it's always fascinating to me that insurance companies won't give you a copy of the policy in later years if you want to get it. I disagree with a lot of practices. But you've got it eventually. Yes, we've got it now. I think the deposition is really when we found out about the gap, and it was not, I don't think Dr. Liman could plausibly have been said to have subpoena power or anything. Remind me when that deposition was. That was October 8, 2019, and that's when the basis for tolling came out. I think there's maybe been some muddying about whether the claim itself was there versus the tolling, and I think the utility has to deal more with tolling than... As I read your brief there, you said that you were convinced that you didn't need to amend the claim because of the judge's comment in May of 2019. So I'm a little confused how those dates interact. Have you learned of the claim in October, but you were confident that you didn't need to amend in that direction based on a comment in May? The deposition revealed the basis for tolling. We, as principal did, operated under the assumption that this claim was live and they put someone up for deposition on this issue solely. Who was that? Salem Thorpe, the author of the Benefit Update Rider letters. They still have no ledge, no prejudice. There is no plausible claim that they were surprised by this. All of our initial response or reply briefs, both parties addressed the Benefit Update Rider. This is purely a procedural argument, and I think we can very credibly say that some of this confusion was based on comments by the court. Now, we can ultimately disagree on why he said that or what the import was, but both parties marched along for two years on that understanding, and this is really checking a box, and we think the rules would require just an amendment to be freely given in this circumstance. It is a discretionary decision, but that discretion is fairly limited in this context. Do you think that more, or has either party argued that more discovery would have been necessary had the complaint been amended? No. No, ma'am. There is nothing like that, and we would be the ones wanting discovery. They could not plausibly say we need to get some of our own materials to put forth. I mean, this was a done deal. We were expecting to get a summary judgment ruling in our favor on it at the time, but the reply brief made this argument. I see I'm out of time. Could I clarify the bad faith thing? I guess the – Sure, if you're brief. Yeah. Ultimately, the issues three and four were just about bad faith. I mean, that's the only claim being litigated. I just combined them because of the time we weren't conceding, and that's why I kind of described that path of proof of loss is really dealing with this hypothetical denial that never happened. We were just saying, well, if you're going to say we didn't have to decide what was being insured, what was primary, you have to actually make a decision. Deciding not to pay a claim is not deciding a claim. Defining a heuristic of something being primary is that it's the most important. If you cannot point to anything besides what Dr. Winans has said from day one was his primary occupation, then you don't get to shrug your hands and say, well, you didn't give us enough evidence to decide that. That's the only question in this hypothetical scenario. Actually, they changed the terms of the policy, and you can't do that. That's what happened. Thank you very much. We appreciate counsel's argument, and we'll move to our next case, which is Bridget.